**WO**

JDN

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jeremy Pinson, | No. CV 20-00169-TUC-RM |
| Plaintiff, | |
| vs. | **ORDER** |
| Othon, et al., | |
| Defendants. | |

Plaintiff Jeremy Pinson,[1] who is currently confined in the Special Housing Unit ("SHU") at the United States Penitentiary in Tucson, Arizona ("USP-Tucson"), brought this pro se civil rights action under 28 U.S.C. § 1331 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S 388 (1971), against multiple officials at USP-Tucson. (Doc. 54.)[2] Pinson asserted Eighth Amendment conditions-of-confinement claims based on Defendants' alleged failure to take measures to help protect her against the risk of contracting COVID-19. (*Id.*) Before the Court is Pinson's Motion for Temporary Restraining Order ("TRO") seeking an Order directing Defendants to provide

---

[1] Plaintiff is transgender and uses feminine pronouns. (*See* Doc. 11, Ex. 1.)

[2] Defendants are (1) Warden Barbara von Blanckensee; Associate Wardens (2) Michael Segal and (3) D. Gonzalez; (4) Bureau of Prisons ("BOP") Chief John O'Brien; SHU Lieutenants (5) Jeremy Ulrich and (6) Garrett Merrell; (7) Western Regional Director Gene Beasley; (8) Complex Captain Darrin McWhorter; and SHU Officers (9) Othon, (10) D. Blondeaux, (11) J. Dukett, (12) Estrella, (13) Martinez, (14) Kurtz, and (15) T. Schneider. (Doc. 54.)

all prisoners in USP-Tucson with N95 respirator masks in response to the COVID-19 pandemic. (Doc. 62.) Defendants oppose the Motion. (Doc. 73.) The Motion for TRO will be denied.

**I.     Standard for Injunctive Relief**

The standards for issuing a temporary restraining order and a preliminary injunction are the same. *White v. Lindermen*, No. CV 11-8152-PCT-RCB, 2012 WL 5040850, at *1 (D. Ariz. 2012). "A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (internal citation and quotation omitted); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("a preliminary injunction is an extraordinary remedy never awarded as of right.").

A plaintiff seeking injunctive relief must show (1) she is likely to succeed on the merits, (2) she is likely to suffer irreparable harm without an injunction, (3) the balance of equities tips in her favor, and (4) the requested injunction is in the public interest. *Winter*, 555 U.S. at 20. The movant has the burden of proof on each element of the test. *Envtl. Council of Sacramento v. Slater*, 184 F. Supp. 2d 1016, 1027 (E.D. Calif. 2000). "Speculative injury does not constitute irreparable injury to warrant granting a preliminary injunction." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (internal citation omitted). "A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief." *Id.*

Where a plaintiff seeks a mandatory injunction, which orders a party to take a specific action, as opposed to a prohibitory injunction, which prohibits a party from acting and thus preserves the status quo, the plaintiff faces "heightened scrutiny." *Dahl v. HEM Pharm. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993); *see also Comm. of Cent. Am. Refugees, v. INS*, 795 F.2d 1434, 1441 (9th Cir.), amended, 807 F.2d 769 (9th Cir. 1986)

(courts should be "extremely cautious" about issuing a mandatory injunction and one should not issue "unless the facts and law clearly favor the plaintiff").

The Prison Litigation Reform Act imposes additional requirements on prisoner litigants who seek preliminary injunctive relief against prison officials and requires that any injunctive relief be narrowly drawn and the least intrusive means necessary to correct the harm. 18 U.S.C. § 3626(a)(2); *see Gilmore v. People of the State of Cal.*, 220 F.3d 987, 999 (9th Cir. 2000).

## II.  Pinson's Motion for TRO

Pinson moves the Court to enjoin Defendants "from refusing to supply N95 masks to all inmates in an equal fashion as the staff at USP Tucson." (Doc. 62.) Although written in prohibitory terms, Pinson effectively seeks a mandatory injunction, requiring that Defendants begin providing N95 masks to prisoners. Pinson states that on October 21, 2020, a COVID-19 outbreak was declared at USP-Tucson, and since then she has observed USP-Tucson staff wearing N95 masks. (*Id.* at 1 & Attach., Pinson Decl. ¶ 1.) She further states that she is "locked in a prison where she shares (along with 1300 others) a ventilation system with no filtration to prevent COVID-19 from spreading," and the fact that prison staff have recently upgraded their masks indicates "a sudden and serious change in the risk of COVID-19." (Doc. 62 at 1.) Pinson argues that it is "morally reprehensible" to provide upgraded masks to staff but not to prisoners. (*Id.* at 2.)

Defendants oppose the Motion and argue that Pinson has not met her burden to show that a TRO should issue. (Doc. 73.) Defendants argue that Pinson has failed to carry her burden with respect to the second factor for injunctive relief because she has not shown that the lack of an N95 respirator will cause her irreparable injury. (*Id.* at 4.) Defendants assert that "the provision of N95 respirators to inmates is not medically indicated, [is] impractical, and poses a significant security risk to the institution." (*Id.*)

Defendants rely on the declaration of Thomas Dixon, R.N., who is the Bureau of Prisons' BOP Quality Improvement/Infection Prevention and Control Consultant for the

- 3 -

Western Region Health Services Medical Asset Support Team. (*Id.*, Ex. A, Dixon Decl. ¶ 1.) Dixon states that Pinson was placed in COVID-19 quarantine within the SHU on September 30, 2020, and has remained in the same quarantine cell since, which has minimized her exposure to COVID-19. (*Id.* ¶ 4.) Dixon further states that, since October 1, 2020, Pinson has been tested for COVID-19 four times and all test results have been negative. (*Id.*)

Dixon opines that the provision of N95 respirators to prisoners is not medically indicated and is "problematic and inappropriate." (*Id.* ¶ 6.) Dixon outlines the mask requirements for USP-Tucson staff and how the requirements have evolved over the course of the pandemic. (*Id.* ¶¶ 8–10.) Dixon states that staff who work in "isolation units," which hold all suspected and confirmed COVID-19 positive prisoners, are required to wear N95 respirators as part of their personal protective equipment. (*Id.* ¶ 8.) Some of these staff choose to wear the N95 throughout the day. (*Id.*) Although N95 masks are only required for staff working in isolation units, they are recommended for all staff who "move from cell to cell, range to range, and sometimes from unit to unit" throughout the day. (*Id.* ¶ 9.) The risk of exposure for staff members is higher than for prisoners due to the nature of their jobs and their exposure to hundreds of prisoners each day. (*Id.*)

Defendants also rely on guidance published by the Centers for Disease Control and Prevention ("CDC"), which has recommended cloth or non-surgical disposable masks for the general public. (*Id.* ¶ 11 & Attach. 3.) Defendants submit a copy of the CDC guidance on masks, which states:

> The Centers for Disease Control and Prevention (CDC) does not recommend that the general public wear N95 respirators to protect themselves from respiratory diseases, including coronavirus (COVID-19). Those are critical supplies that must continue to be reserved for health care workers and other medical first responders, as recommended by current DC guidance.
>
> . . .

> The CDC recommends that members of the public use simple cloth face coverings when in a public setting to slow the spread of the virus . . . .

(Doc. 73-1 at 11.)

Dixon explains that to be effective, N95 respirator wearers must be fit-tested for a specific make, model, and size of respirator; they must comply with respirator facial hair grooming standards; and they must undergo medical screening to ensure they can tolerate the additional restrictions the device places on the respiratory system. (Doc. 73, Ex. A, Dixon Decl. ¶ 12.) Dixon submits that attempting to medically screen and properly fit all prisoners for N95 respirators would require resources currently unavailable. (*Id.*) He states that USP-Tucson's limited supply of N95 respirators is barely sufficient to cover those staff members required to wear them. (*Id.* ¶ 14.)

### III.  Discussion

Pinson's request for injunctive relief is specific—that Defendants be ordered to provide her and other prisoners N95 respirators. (Doc. 62.) The CDC guidance recommends, however, that the general public wear cloth masks and specifically advises that the public not wear N95 respirators. Pinson does not present any facts to support that she and other prisoners are in a position similar to medical care workers or first responders, who the CDC advises wear N95 respirators. Defendants' evidence also establishes that the USP-Tucson's supply of N95 respirators is limited; thus, pursuant to the CDC guidelines, the N95 respirators must be reserved for health care workers and medical first responders.

Based on this evidence, Pinson cannot show that, absent an injunction for an N95 respirator, she will be exposed to irreparable harm. *See Caribbean Marine Servs.*, 844 F.2d at 674; Fed. R. Civ. P. 65(b)(1)(A) (a temporary restraining order may issue only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result . . . "). Whether Pinson is provided adequate face coverings is an issue raised in Pinson's previously filed Motion for Preliminary Injunction, which the Court addresses separately. (*See* Doc. 11.) The pending Motion for TRO will be denied. *See Center for Food Safety v. Vilsack*, 636 F.3d

1166, 1174 (9th Cir. 2011)  (because the plaintiffs failed to show they are likely to suffer irreparable harm in the absence of preliminary relief, the court need not address the remaining elements of the preliminary injunction standard).

**IT IS ORDERED** that Plaintiff's Motion for Temporary Restraining Order (Doc. 62) is **denied**.

Dated this 30th day of November, 2020.

_____
Honorable Rosemary Márquez
United States District Judge